IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NATHAN MELTON,<br><br>Defendant. | No. CR13-0014-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S APPEAL OF MAGISTRATE'S ORDER DISQUALIFYING DEFENSE COUNSEL** |

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION AND BACKGROUND..............................................2*

*II.  ANALYSIS .................................................................................4*
    *A.   Standard Of Review ...........................................................4*
    *B.   Review Of Disqualification Order ........................................6*
        *1.   Unsworn witness........................................................8*
        *2.   Prosecution rebuttal witness......................................13*
        *3.   Defense witness.......................................................17*

*III. CONCLUSION..........................................................................18*

This case is before me on defendant Nathan Melton's appeal of Chief United States Magistrate Judge Jon S. Scoles's order disqualifying defense counsel. Melton's appeal raises the following issues: whether defense counsel must be disqualified

because his representation of Melton at trial would make defense counsel an unsworn witness, or because of the possibility that defense counsel might be called as either a prosecution or defense rebuttal witness.

## I. INTRODUCTION AND BACKGROUND

On March 20, 2013, an Indictment was returned against Melton charging him with resisting a federal officer, a Deputy United States Marshal, with actions that involved physical contact with, and inflicted bodily injury to the Deputy Marshal, in violation of 18 U.S.C. §§ 111(a) & (b). The charge stems from events at a hearing held on November 19, 2012, before Chief Judge Linda R. Reade. The hearing was to determine whether Melton's supervised release should be revoked.[1] Attorney Raphael M. Scheetz represented Melton at the hearing. At the beginning of the hearing, Chief Judge Reade was informed that a urine sample Melton submitted immediately prior to the hearing tested presumptively positive for synthetic marijuana.[2] Melton denied using any controlled substance. Chief Judge Reade ordered that the hearing be continued and Melton detained. Melton requested that he be permitted to remain free pending further testing of his urine sample by a certified laboratory. Chief Judge Reade denied Melton's request. When a Deputy Marshal attempted to take Melton into custody, an altercation occurred in which the Deputy Marshal was allegedly injured.

On April 12, 2013, the prosecution filed a Motion to Disqualify in which it requests Scheetz be disqualified from representing Melton. The prosecution contends

---

[1]Melton was on supervised release as part of his sentence for a bank fraud conviction in *United States v. Melton*, CR08-0082-LRR (N.D. Iowa).

[2]Melton's urine sample, submitted on November 19, 2012, ultimately tested negative for synthetic cannabinoids.

that Scheetz must be disqualified for three reasons: first, because his participation at trial would cause him to be an unsworn witness; second, that he is likely to be a necessary witness for the defense; and, third, that there is a "strong possibility" that he could be a necessary witness for the prosecution. On April 24, 2013, Melton filed a resistance to the prosecution's motion. On May 7, 2013, Judge Scoles held a hearing on the prosecution's motion. On May 10, 2013, Judge Scoles issued an order granting the prosecution's motion. Judge Scoles found that if Scheetz was permitted to appear as defense counsel he may become an unsworn witness. Order at 6. Judge Scoles further found that Scheetz might be a necessary rebuttal witness for the defense. Order at 8. Finally, Judge Scoles found that Scheetz might be a necessary witness for the prosecution, particularly if the defense successfully challenges the prosecution's other witnesses for bias. Order at 9. Thus, Judge Scoles granted the prosecution's motion and ordered "Mr. Scheetz will not be permitted to represent the defendant at trial." Order at 11.

Melton has appealed Judge Scoles's order disqualifying Scheetz from representing him. In his appeal, Melton argues that Judge Scoles's order is contrary to the law or clearly erroneous because the possibilities that Scheetz might be called as a prosecution witness or a defense rebuttal witness are insufficient to meet the test for disqualification. Melton also argues that Judge Scoles did not give sufficient weight to Melton's Sixth Amendment right to counsel and the substantial hardship he would suffer by not being represented by his counsel of choice. In particular, Melton points out that Judge Scoles gave no weight to Scheetz's six years representing Melton on a number of matters. Finally, Melton contends that Judge Scoles's reliance on the unsworn witness theory is clearly erroneous and contrary to law. The prosecution filed a timely resistance to Melton's appeal. The prosecution argues that Judge Scoles

correctly ruled that Scheetz should be disqualified from representing Melton because Scheetz's participation in the trial would cause him to be an unsworn witness due to him being present and observing the incident. The prosecution further argues that Judge Scoles correctly found that Scheetz's representation of Melton will prevent him from offering testimony that may be needed to rebut a prosecution witness's testimony. The prosecution also argues that because Scheetz witnessed the incident and occupies a position that is clearly not biased toward the prosecution, Judge Scoles's finding that Scheetz may become a necessary prosecution rebuttal witness is not clearly erroneous or contrary to the law. Finally, the prosecution contends that Judge Scoles's decision does not violate Melton's Sixth Amendment rights.

## II.   ANALYSIS

### A.   *Standard Of Review*

A district judge's review of a magistrate judge's order on a nondispositive matter is governed by Federal Rule of Criminal Procedure 59(a), which states:

> A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. A party may serve and file objections to the order within 14 days after being served with a copy of a written order or after the oral order is stated on the record, or at some other time the court sets. The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous. Failure to object in accordance with this rule waives a party's right to review.

FED R. CRIM. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A). A motion to dismiss or disqualify counsel is a nondispositive matter. *See McCans v. City of Truth or*

*Consequences*, 360 Fed. App'x 964, 966 n.3 (10th Cir. 2010); *Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997); *Medgyesy v. Medgyesy*, --- F. Supp. ---, 2013 WL 1943438, at *1 n.1 (N.D. Ill. May 10, 2013); *DeBiasi v. Charter County of Wayne*, 284 F. Supp.2d 760, 768 (E.D. Mich. 2003); *Hammond v. City of Junction City*, 167 F.Supp.2d 1271, 1288-89 (D. Kan. 2001). Thus, I will reverse Judge Scoles's order only if that ruling is "clearly erroneous or contrary to law." FED. R. CRIM. P. 59(a).

Although the Eighth Circuit Court of Appeals has not addressed the standard of review under Rule 59(a), it has observed, in another context, that "clear error" is a "deferential standard of review" that allows the reviewing court to reverse "only . . . when the entire record definitely and firmly illustrates that the lower court made a mistake." *United States v. Marshall*, 411 F.3d 891, 894 (8th Cir. 2005) (citing *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003), and *United States v. Causor-Serrato*, 234 F.3d 384, 389 (8th Cir. 2000)). Other Circuit Courts of Appeals have provided comparable formulations of the "clearly erroneous" standard in the Rule 72(a) context. *See, e.g., Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) ("In reexamining this question [upon objections to a magistrate judge's ruling on a non-dispositive matter], the district court was required to 'defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law.'" *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) (citing 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)). Under the clearly erroneous standard, 'the reviewing court [must] affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."' *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))."); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) ("Like the district

court, we review these factual findings under the 'clearly erroneous' rubric. See 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). This means that we must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, we 'form a strong, unyielding belief that a mistake has been made.' *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)."); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

The Eighth Circuit Court of Appeals also has not opined on the meaning of the "contrary to law" prong of review under Rule 59(a). One federal district court has explained, however, that "[a]n order may be deemed contrary to law [within the meaning of Rule 72(a)] 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)). I will review Judge Scoles's order with these standards in mind.

### B. *Review Of Disqualification Order*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.; *see United States v. Baisden*, 713 F.3d 450, 454 (8th Cir. 2013) ("The Sixth Amendment guarantees a criminal defendant the right to counsel."). The United States Supreme Court has observed that "this right was designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 158

(1988). "The Sixth Amendment protects a criminal defendant's right to a fair opportunity to secure the counsel of his choice." *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009) (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Although a defendant has a right to counsel of his choice under the Sixth Amendment, it is not an absolute right. *See Id.* at 159; *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012); *United States v. Brumer*, 528 F.3d 157, 160 (2nd Cir. 2008). As the Court explained,

> Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.

*Wheat*, 486 U.S. at 159. Accordingly, the Court went on to add that,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Id.*

Because the question of disqualification directly implicates a defendant's Sixth Amendment rights "disqualification of defense counsel should be a measure of last resort, and 'the government bears a heavy burden of establishing that disqualification is justified.'" *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)); *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986) ("In seeking to disqualify a defendant's chosen

7

counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification."); *see also Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) ("Attorney disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'") (quoting *Schiessle v. Stephens*, 717 F.2d 417, 419–20 (7th Cir. 1983)); *Evans v. Artek Systems Corp.*, 715 F.2d 788, 794 (2d Cir. 1983) (holding that the moving party bears a "heavy burden of proving [the] facts required for disqualification."). In evaluating a request for defense counsel's disqualification, courts

> must recognize a presumption in favor of [the accused's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Wheat*, 486 U.S. at 164.

The overriding question presented by Judge Scoles's disqualification order is whether Scheetz's presence at the revocation hearing gives rise to grounds sufficient to override Melton's Sixth Amendment right to counsel of his choice. Because Judge Scoles relied on three grounds to disqualify Scheetz, I will consider each of these grounds in turn, commencing with the question of whether Scheetz should have been disqualified because Scheetz's representation of Melton at trial would make Scheetz an unsworn witness.

### 1. *Unsworn witness*

The circumstances necessitating counsel's disqualification as an unsworn witness are murky, and the parties provide scant authority to guide me. However, both parties, like Judge Scoles, rely heavily on the Iowa Supreme Court's decision in *State v.*

8

*Vanover*, 559 N.W.2d 618 (Iowa 1997). Accordingly, a brief review of that decision is necessary.

In *Vanover*, defense counsel personally obtained statements from co-defendants, and testified at his client's parole revocation hearing in a separate case.[3] *Id.* at 623. In one co-defendant's statement, the co-defendant "implicated herself in the crimes and exculpated" the defendant. *Id.* at 629. Defense counsel's testimony regarding the statement was thus deemed "very favorable" to the prosecution's case against the co-defendant in the upcoming joint trial. *Id.* In order to admit the co-defendant's statement, the prosecution listed defense counsel as a witness. *Id.* at 623. The trial court determined defense counsel should withdraw because he had a conflict of interest. *Id.* at 624-25. On appeal, the Iowa Supreme Court determined that once defense counsel learned the prosecution intended to call him as a witness, he was obligated to withdraw if it appeared his testimony was or might be prejudicial to the defendant. *Id.* at 629. The Iowa Supreme Court explained that since defense counsel was a witness, his credibility could be called into question and this would likely prejudice defendant in the eyes of the jury. *Id.* at 631. The Iowa Supreme Court pointed out that defense counsel would have an incentive to conduct the trial in a manner which would "minimize his own exposure at his client's expense." *Id.* The court further held that even if defense counsel did not testify at trial, "he would have had the status of an unsworn witness." *Id.* at 632. The court observed that "[a]n attorney acts as an unsworn witness when the attorney's relationship to the client results in the attorney having first-hand knowledge of events presented at trial." *Id.* The court explained that:

---

[3] Another attorney represented the defendant at the parole revocation hearing. *Id.* at 622.

> Such a potential status is a reason for disqualification under DR 5-102(A) for several reasons. [*United States v. Locasio*, 6 F.3d 924, 933 (2nd Cir. 1993)]. First, counsel may be "constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client." *Id*. Second, counsel's role "as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear on oath or be subject to cross-examination." *Id*.

*Id*. at 633.[4]

Thus, the Iowa Supreme Court adopted the unsworn witness rule that applies in the Second Circuit Court of Appeals. There, the unsworn witness rule becomes an issue when an attorney participants in or witnesses the events to be explored at trial. *See United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993). It applies in those circumstances where "the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination" regardless of whether he is a necessary witness. *Id*. at 933. Counsel providing unsworn testimony is not at odds with his client because there is no conflict of interest. *See id*. at 933–34. Rather, "the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." *Id*. at 934.

---

[4]The Iowa Code of Professional Responsibility for Lawyers, which incliudied the Disciplinary Rules, was rescinded on July 1, 2005, and replaced by the Iowa Rules of Professional Conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schall*, 814 N.W.2d 210, 213 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 55 n. 1 (Iowa 2009). Disciplinary Rule 5-102 has been replaced by Iowa Rule of Professional Conduct 32:3.7.

The Eighth Circuit Court of Appeals has never adopted an unsworn witness rule. Assuming, arguendo, that the Eighth Circuit Court of Appeals would adopt such a rule, the prosecution's motion fails. Under that rule, attorney disqualification is a "drastic remedy," reserved for cases where an attorney has "entangled himself to an extraordinary degree" in the events at issue at trial. *See United States v. Evans*, 584 F.3d 904, 909 (10th Cir. 2009); *Locascio*, 6 F.3d at 934. A comparison of Scheetz's "involvement" here with that of defense counsel in either *Vanover* or *Locascio,* clearly demonstrates that Scheetz has not "entangled himself to an extraordinary degree" requiring his disqualification. Scheetz was merely present at the November 19th revocation hearing and appears to have witnessed some of the events that occurred on that date. However, he was hardly the only witness to those events. In addition to Scheetz, the following individuals were present at the revocation hearing or responded to the incident: Chief Judge Linda Reade; Chief Judge Reade's court reporter, Kay Carr; United States Probation Officers Amber Lupkes, Peter Koenig, and Rhonda Moyle; Deputy Clerk Erin Snider; at least two Court Security Officers; Deputy United States Marshal Dorsey Covenah; Special Assistant United States Attorney Lisa Williams; Melton's sister, Brianna Melton; her boyfriend, Melton's father, Richard Melton; and Melton's girlfriend, Kaylee Davis. Moreover, video of much of the incident, and audio of the entire incident, was recorded. In contrast, defense counsel in *Vanover* personally obtained exculpatory statements from co-defendants, and testified at his client's parole revocation hearing regarding those statements. *Vanover*, 559 N.W.2d at 623. In *Locascio*, the district court found that defense counsel had acted as "house counsel" to the Gambino Crime Family by receiving "benefactor payments" from the defendant to represent others in the criminal enterprise. *Locascio*, 6 F.3d at

932. The district court also found that defense counsel participated in taped conversations during which illegal activity was discussed. *Id*.

Because Scheetz has not "entangled himself to an extraordinary degree," the potential unsworn witness problems caused by Scheetz's presence at the revocation hearing can be resolved by clear instructions to the jury that statements or arguments of counsel are not evidence. "'A jury is presumed to follow its instructions.'" *Blueford v. Arkansas,* 132 S. Ct. 2044, 2051 (2012) (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)); *see Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Mann*, 701 F.3d 274, 292 (8th Cir. 2012); *United States v. Rubashkin*, 655 F.3d 849, 862 (8th Cir. 2011). The danger that a jury would ignore such an instruction and be swayed by Scheetz's mere presence at the revocation hearing is greatly reduced by two circumstances. First, video of much of the incident, and audio of the entire incident, was recorded. As a result, jurors will be able to view and hear much of what occurred at the revocation hearing for themselves. Second, Scheetz was not the only witness to the incident. Jurors may hear from several witnesses who were also present for all or part of the incident, including some who were in a better position to view the events than Scheetz. Because Scheetz is but one of many individuals present at the revocation hearing, the likelihood that he could sway the jury by subtly imparting to them his first-hand knowledge of events is largely eliminated. Whatever remote possibilities of such conduct that remain can be curtailed through vigorous monitoring to ensure that Scheetz does not improperly imply that any witness's version of events is inaccurate or otherwise provide impermissible unsworn testimony. *See Fonten Corp. v. Oscean Spray Cranberries, Inc.*, 469 F.3d 18, 23 (1st Cir. 2006) (holding that trial judge "ably ensured" that counsel "did not cross any lines" by warning counsel "not to imply that

any witness's version of events was inaccurate" and monitoring counsel's actions at trial).

Thus, I conclude that Judge Scoles's decision was contrary to law because the prosecution has not met its heavy burden of demonstrating that Scheetz's continued representation will cause him to be an unsworn witness that will impair the fact finding process or prejudice the prosecution.

### 2. *Prosecution rebuttal witness*

Melton also challenges Judge Scoles's conclusion that Scheetz must be disqualified from representing Melton because he may be called as a prosecution rebuttal witness. The applicable Iowa Rule of Professional Conduct provides:

> **Rule 32:3.7. Lawyer as witness**
>
> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 32:1.7 or Rule 32:1.9.

IOWA RULES OF PROF'L CONDUCT 32:3.7.[5]

There are no reported decisions from the Iowa appellate courts interpreting Rule 32:3.7. The Eighth Circuit Court of Appeals and other federal courts have examined

---

[5] Local Rule 83.1(g)(1) states that the Iowa Rules of Professional Conduct "govern all members of the bar of this court . . ."

other states' identical versions of Rule 32:3.7. The Eighth Circuit Court of Appeals has recognized that Missouri's rule "has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'" *Macheca Transp. Co. v. Philadelphia Idem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *State ex rel. Wallace v. Munton*, 989 S.W.2d 641, 646 (Mo. Ct. App. 1999)). In *Macheca Transp. Co.*, the court of appeals held the district court abused its discretion when it disqualified an attorney without first determining whether he would be the only witness who could testify to events surrounding a vexatious refusal to pay claim. *Id.* at 833–34.

The Fifth Circuit Court of Appeals has similarly held that: "[a] lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source." *United States v. Starnes*, 157 Fed. App'x 687, 693-94 (5th Cir. 2005 (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001)); *see Tennessee Bank & Trust v. Lowry*, No. 3:11-0984, 2012 WL 4849968, at * 1 (M.D. Tenn. Oct. 11, 2012) (holding that an attorney is a "necessary witness" for purposes of Tennessee Rule of Professional Conduct 3.7(a) "only if 'there are things to which he will be the only one available to testify.'") (internal quotation marks omitted); *Rothberg v. Cincinnati Ins. Co.*, No. 1:06–cv–111, 2008 WL 2401190, at *2 (E.D. Tenn. June 11, 2008) ("For a lawyer to be a necessary witness, his testimony must be relevant, material, and unobtainable elsewhere."); *Harter v. University of Indianapolis*, 5 F.Supp.2d 657, 663 (S.D. Ind. 1998) ("A necessary witness is not the same thing as the 'best' witness. If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it certainly is not necessary."); *World Youth*

14

*Day, Inc. v. Famous Artists Merchandising Exchange, Inc.*, 866 F. Supp. 1297, 1302 (D. Colo. 1994) (holding that a lawyer is a "'necessary' witness if his or her testimony is relevant, material and unobtainable elsewhere."); *see also Mettler v. Mettler*, 928 A.2d 631, 633 (Conn. Super. Ct. 2007) (holding that under Connecticut Rule of Professional Conduct 3.7, "[a] necessary witness is not just someone with relevant information, however, but someone who has material information that no one else can provide"); *Clough v. Richelo*, 616 S.E.2d 888, 891-92 (Ga. Ct. App. 2005) (holding under Georgia Rule of Professional Conduct 3.7(a) that party seeking disqualification must demonstrate "that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts"); *Weigel v. Farmers Ins. Co.*, 158 S.W.3d 147, 153 (Ark. 2004) (holding under Arkansas Rule of Professional Conduct 3.7 that party seeking disqualification of an attorney must demonstrate that the attorney has personal knowledge which "is unobtainable elsewhere"); *State v. Van Dyck*, 827 A.2d 192, 194 (N.H. 2003) ("A lawyer is a necessary witness if his or her testimony is relevant, material and unobtainable elsewhere."). In *Starnes*, the defendant sought to disqualify a prosecutor who had participated in two searches relevant to defendant's case. *Starnes*, 157 Fed. App'x at 694. The court of appeals concluded the prosecutor was not a necessary witness because he was not alone during the searches, and the defendant did not allege that the prosecutor had observed anything that was not observed by the other persons present during the search. *Id*.

The parties failed to bring the *Macheca-Starnes* line of authorities to Judge Scoles's attention. Under this line of authorities, the prosecution has not established that Scheetz is likely to be a necessary witness for it at trial. Indeed, the prosecution

15

does not intend to call Scheetz in its case-in-chief. Hearing Tr. at 19. Instead, as the prosecution explained at the hearing on its motion to disqualify:

> [I]f the defense has some success in challenging these witnesses for bias, the Government may wish to call a witness who observed these incidents and who cannot be attacked for bias in that he – he was on the other side and represented the defendant. So that's how I can foresee the possibility that the Government would want to call Mr. Scheetz.

Hearing Tr. at 20. This showing is insufficient as a matter of law. "Testimony may be relevant and even highly useful, but still not strictly necessary." *Macheca Transp. Co.*, 463 F.3d at 833. As I explained above, Scheetz was not the only individual at the revocation hearing. Moreover, the prosecution has failed to identify "'things to which he will be the only one available to testify.'" *Id.* (quoting *State ex rel. Wallace*, 989 S.W.2d at 646). Indeed, Scheetz's value as a witness is almost entirely unknown. He did not testify before the grand jury and he has not provided the prosecution with a statement regarding his observations of the revocation hearing incident. In contrast, Chief Judge Reade stated at the conclusion of the revocation hearing held on December 6, 2012, that:

> I witnessed it. And after I fled the courtroom for my own safety and took my staff with me, I watched it on the TV screen in my robing room. I can watch everything that goes on. I saw what happened. Mr. Melton had countless opportunities to comply and to stop struggling. In my opinion, the part of his struggle and just outright fighting the marshals, a probation officer – Mr. Koenig was trying to help, and court security was trying to calm him down. . .
>
> I heard the United States marshal give clear, respectful commands to stop struggling. I heard Mr. Kownig order the defendant "Stop struggling." He continued to struggle. It was over 4 minutes. And I even

> watched him – as the marshals finally got cuffs on him, after causing an injury to the marshal, getting blood all over the new courtroom, ruining a table, I saw him continue to struggle, even as they took him out of the courtroom.

Revocation Hearing Tr. at 50-51. The prosecution has not alleged that Scheetz observed something that was not observed by Chief Judge Reade or anyone else in the courtroom.

By considering only whether Scheetz's testimony was possibly relevant as a prosecution rebuttal witness, and failing to consider whether Scheetz was the only witness available to testify about something concerning the incident at the revocation hearing, Judge Scoles's decision to disqualify Scheetz was contrary to law.

### 3. *Defense witness*

Finally, Melton argues that Judge Scoles erred in concluding that Scheetz must be disqualified from representing Melton because he might be called as a defense rebuttal witness. This reason for disqualifying Scheetz fails for the same reasons discussed above concerning Scheetz as a possible prosecution rebuttal witness. Judge Scoles noted that "[t]he defense does not 'plan' on calling Mr. Scheetz as a witness at trial. . ." Order at 8. With respect to Scheetz being a defense rebuttal witness, as I already explained, Scheetz was not the only individual at the revocation hearing. Moreover, the prosecution makes no claim that there are things to which Scheetz will be the only one available to testify to at trial. *See Macheca Transp. Co.*, 463 F.3d at 833. To the contrary, Scheetz states: "The undersigned had no direct observation or knowledge regarding the handcuff being accidently closed on the deputy's finger, other than what the undersigned read in the discovery file." Defendant's Br. at 7. Thus, Judge Scoles's decision to disqualify Scheetz because he might be called as a defense rebuttal witness was also contrary to law.

17

### *III. CONCLUSION*

Having found Judge Scoles's reasons for disqualifying Scheetz to be contrary to law, the order granting the prosecution's Motion To Disqualify is reversed and set aside in its entirety and Scheetz is reinstated as counsel for Melton.

**IT IS SO ORDERED**.

**DATED** this 6th day of June, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA